**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

**TONYA G. LIGGION,**

                   **Plaintiff,**

    **v.**                                    **1:11-cv-01133-WSD**

**BRANCH BANKING AND TRUST,**

                   **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Branch Banking and Trust Company's ("Defendant" or "BB&T") Motion to Dismiss Tonya G. Liggion's ("Plaintiff") Amended Complaint [23] ("Fourth Complaint").

## I.    BACKGROUND

This is Plaintiff's second action on this matter in this Court.  A prior *pro se* action was voluntarily dismissed in December 2010.  See  Liggion v. Branch Bank and Trust Co., Case No. 1:10-CV-3142-RWS-CCH ("First Action").

On February 14, 2007, Plaintiff obtained two residential mortgage loans (collectively the "Loans") from Defendant, the first in the amount of $1,000,000 and the second in the amount of $229,000.  The Loans were obtained by Plaintiff to purchase her primary residence at 4558 Revenue Trail, Ellenwood, GA 30294

(the "Property").  Plaintiff executed a promissory note to Defendant and a security deed (the "Deed") giving Defendant a security interest in the Property in connection with the Loans.  The Deed named Mortgage Electronic Registration System, Inc. ("MERS") as the entity to hold legal title to the Property.  The Deed expressly provided that MERS had the right to foreclose on and sell the property in the event of a default on the Loans.  (Mot. to Dismiss dated June 17, 2011, Ex. A, at 3).

On or about September 10, 2008, MERS transferred its security interest under the Deed to Defendant.

On July 1, 2010, Plaintiff received notice that the Property would be sold at a foreclosure sale on August 3, 2010.[1]  On August 2, 2010, the day before the mortgage sale, Plaintiff filed her Chapter 11 bankruptcy action in the United States Bankruptcy Court for the Northern District of Georgia.

Plaintiff alleges that "in or around September 2010," she sent a qualified written request ("QWR") to Defendant.  This purported QWR allegedly requested the "initial loan documents, recorded transfers, and other relevant documents in

---

[1] It is unclear from the pleadings when Plaintiff defaulted.  Plaintiff has not asserted that she is not in default under the loans.  She challenges only whether MERS was properly granted the right to foreclose on the Property in the event of default and thus challenges whether Defendant was authorized to foreclose on the Property.

regards to the loan." (Fourth Complaint ¶ 10).  She claims to have also requested, in the QWR, the original promissory note, information about the relationship between BB&T and MERS, including the assignment of the security interest from MERS to BB&T. (Id.).

On October 1, 2010, Plaintiff, acting *pro se*, filed her first complaint in which she asserted claims against Defendant and MERS ("First Complaint").  The First Complaint claimed that Defendant and MERS had violated several federal statutes, including the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45; the Truth in Lending Act ("TILA"), 14 U.S.C. §§ 1601 et. seq.; the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et. seq.; and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 et. seq.  Plaintiff also asserted several state law claims including fraud, fraud in the inducement, breach of contract, and civil conspiracy.  On November 4, 2010, Defendants moved to dismiss the action.

On November 24, 2010, Plaintiff filed her *pro se* amended complaint (First Action, [4] or "Second Complaint"), which alleged claims similar to those alleged in her First Complaint.  The Second Complaint contained at the top the heading "QUALIFIED WRITTEN REQUEST," followed by the heading "Complaint for

Permanent Injunction for Cease and Desist and Other Equitable Relief."  (Second Complaint at 1).

On December 6, 2010, Plaintiff filed a Notice of Right to Cancel, Notice of Revocation of Power of Attorney, and Notice of Removal in Clayton County Superior Court.  These documents, executed unilaterally by Plaintiff, purported to divest Defendant of its rights under the mortgage agreement and convey Plaintiff free and clear title to the Property.  (See Third Complaint, Ex. A, B, and C (collectively "Clayton County Notices")).

On December 9, 2010, Magistrate Judge C. Christopher Hagy recommended that the action be dismissed without prejudice.  On December 22, 2010, Plaintiff voluntarily dismissed her Second Complaint upon receipt of the report.

On April 8, 2011, Plaintiff, now represented by counsel, filed this action.  In her now third complaint ("Third Complaint"), Plaintiff asserted a claim under the Real Estate Settlement Procedures Act  ("RESPA") 12 U.S.C. §§ 1601 et. seq., a claim for a declaratory judgment that Defendant has no right to foreclose on the Property because her Clayton County Notices canceled Defendant's security interest, and a claim for injunctive relief from any attempt to foreclose on the

Property, which the Court construed as a motion for a Temporary Restraining Order ("TRO").[2]

On June 17, 2011, Defendant moved to dismiss the Third Complaint on the grounds that it did not state a claim upon which relief could be granted (the "Second Motion to Dismiss").

On July 1, 2011, Plaintiff amended her Third Complaint.[3]  Plaintiff now asserts four claims: First, the RESPA claim from the Third Complaint; second, a new claim under the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. § 1692 et seq.; third, a new state law claim for wrongful foreclosure alleging a breach of the FDCPA; and fourth, the declaratory judgment claim from the Third Complaint.

On July 18, 2011, Defendant filed its third Motion to Dismiss, arguing that the Fourth Complaint still does not state a claim.  Defendant responds to the claims as follows: First, if the Second Complaint is the purported QWR, it does not meet the statutory requirements of RESPA, and, that Plaintiff's Amended Complaint otherwise lacks sufficient facts to state a claim under RESPA.  Second, that Defendant is a creditor, not a "debt collector" within the meaning of the FDCPA.

---

[2] On April 14, 2011, the count for injunctive relief was dismissed as moot when Plaintiff informed the Court that she was not seeking a TRO.

[3] With the filing of the Fourth Complaint and the Motion to Dismiss those claims, the Court declares the second Motion to Dismiss moot.

Third, Defendant asserts it is not liable for an attempted wrongful foreclosure because MERS assigned to Defendant its right under the Deed to foreclose on the Property in the event of Plaintiff's default.  Fourth, Plaintiff is not entitled to a declaratory judgment because Plaintiff did not have a unilateral right to cancel Defendant's security interest in the Property, and thus the Clayton County Notices do not preclude the foreclosure action initiated by Defendant.

## II.     DISCUSSION

### A.     Standard for Motion to Dismiss

In a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiffs."  Edwards v. Prime, Inc., 602 F.3d 1276, 1291 (11th Cir. 2010).  Reasonable inferences are made in Plaintiff's favor, but "unwarranted deductions of fact in a complaint are not admitted as true." Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (internal quotation marks omitted).  Similarly, the Court is not required to accept conclusory allegations and legal conclusions as true.  See id. (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 1951 (2009)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

Iqbal, 129 S. Ct. at 1949 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Mere "labels and conclusions" are insufficient.  Twombly, 550 U.S. at 555.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556). This requires more than the "mere possibility the defendant acted unlawfully." Sinaltrainal, 578 F.3d at 1261.  "The well-pled allegations must nudge the claim 'across the line from conceivable to plausible.'"  Id. (quoting Twombly, 550 U.S. at 570).[4]  That is, the Complaint must make direct factual allegations or suggest reasonable inferential allegations for each material element of some viable legal theory.  See Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007).

     **B.**    **Failure to State a Claim**

          **1.**    **RESPA**

RESPA allows consumers to request from their lenders information on the nature and costs of real estate transactions.  26 U.S.C. § 2601; see also McCarley

---

[4]  Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to state "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In Twombly, the Supreme Court recognized the liberal minimal standards imposed by Federal Rule 8(a)(2) but also acknowledged that "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."  Twombly, 550 U.S. at 555.

v. KPMG Int'l, 293 Fed. App'x 719, 722 (11th Cir. 2008).  "Under RESPA, loan servicers 'ha[ve] a duty to respond to a borrower's inquiry or qualified written request.'"  Mallaly v. BAC Loan Servicing, LLC, No. 3:10-CV-0074, 2010 WL 5140626, *7 (N.D. Ga. Oct. 6, 2010) (quoting 12 U.S.C. § 2605(e)).[5]  Under the statute, the term "qualified written request" is defined as written correspondence relating to the servicing of a loan that (1) includes or otherwise enables the servicer to identify the name and account of the borrower and (2) contains a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.  12 U.S.C. § 2605(e)(1).

Servicing is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan."  12 U.S.C. § 2605(i)(3).  Under RESPA, servicers may designate an exclusive office and address to receive and handle qualified written requests.  24 C.F.R. § 3500.21(e)(1).  A servicer who fails to respond to a qualified written request is liable for the failure, but a borrower is limited to actual damages unless the failure

_____

[5] Defendant does not deny that it is a "servicer" within the meaning of RESPA.

to respond was part of a "pattern or practice of noncompliance" with RESPA's requirements.  See 12 U.S.C. § 2605(f).

Plaintiff alleges that Defendant did not send a written response to her QWR within twenty days as required by 12 U.S.C. § 2605(e)(1)(A) and did not produce the requested documents within sixty days as required by 12 U.S.C. § 2065(e)(2). (Id. ¶ 11).  In Plaintiff's claim under RESPA, she alleges that she "suspect[ed] irregularities in the origination, servicing, and transfer" of the Loans, but she has not disputed that she had defaulted on the Loans and has not alleged that improper servicing caused her default.  (Id.).   Rather, she claims that Defendant does not have the right to foreclose on the Property in the event of default.  Plaintiff's information document requests are not a proper qualified written request under RESPA because they do not relate to the servicing of the loan.[6]  (See id.).  Having failed to allege any factual basis for any loss as a result of improper servicing, Plaintiff's Fourth Complaint fails to state a claim under RESPA because it does not

---

[6] Cf. MorEquity v. Naeem, 118 F. Supp. 2d 885, 901 (N.D. Ill. 2000) (The court dismissed a RESPA claim that "allege[d] a forged deed, and irregularities with respect to the recording of . . . two loans, but [made] no claim with respect to improper servicing. There are no claims, for example, that [the plaintiff] did not give the [defendants] credit for any periodic payments made, which is how the statute defines servicing. According to the allegations of the counterclaim, the letter sought information about the validity of the loan and mortgage documents, but made no inquiry as to the status of the [defendants'] account balance. Therefore, the request did not relate to "servicing" of the loan.").

indicate information she requested in a qualified written request and has not alleged damages she claims to have suffered.  The Court finds that her RESPA claims based on failure to respond to her QWR must be dismissed for failure to state a claim on which relief could be granted.[7]

### 2.    FDCPA and Attempted Wrongful Foreclosure

The FDCPA provides that a debt collector may not take non-judicial action to dispossess property without a present right to possession of the property claimed as collateral.  15 U.S.C. § 1692f(6)(A).  The statute defines "debt collector" to exclude "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor."  Id. § 1692a(6)(A).

Plaintiff alleges that Defendant is her creditor.  (Fourth Complaint ¶ 4).  To state a plausible claim under the FDCPA, Plaintiff must show that Defendant is a debt collector.  Plaintiff has not, however, alleged that Defendant is a debt collector, and the Court finds as a matter of law that Defendant is not engaged in debt collection.[8]   Because Plaintiff cannot state a plausible claim for relief under

---

[7] This claim is dismissed with prejudice because amendment would be futile and cause undue delay.  This Complaint is the fourth in the series of Plaintiff's attempts to avoid foreclosure, and Plaintiff has not alleged any damages or losses due to improper servicing since she sent the QWR in September 2010.

[8] Plaintiff cites Jackman v. Hasty, 2001 WL 854878, at *4-*5 (N.D. Ga. Mar. 8, 2011), to argue that Defendant is a "debt collector" for the purposes of § 1692f(6)(A).  To the extent that this case stands for the proposition that a servicer-

the FDCPA, Plaintiff's FDCPA claim must be dismissed.  Plaintiff's attempted

wrongful foreclosure claim, which is predicated on the alleged FDCPA claim, also

is required to be dismissed because Plaintiff has failed to allege a viable FDCPA

claim.[9]

       3.     Declaratory Judgment

The Court "can grant declaratory relief only if there is a substantial

controversy of sufficient immediacy and reality between parties having adverse

legal interests." Sullivan v. Division of Elections, 718 F.2d 363, 365 (11th Cir.

---

creditor can be a "debt collector," it is incorrect because § 1692a(6)(A) states that
creditors are not debt collectors.  Jackman seems to have erroneously relied on
Selby v. Bank of Am., Inc., 2010 WL 4347629, at *2 (S.D. Cal. Oct. 27, 2010),
which involved a servicer who was not a creditor.  See, e.g., Montgomery v.
Huntington Bank, 346 F.3d 693, 699 (6th Cir. 2003) ("[T]he federal courts are in
agreement: A bank that is a creditor is not a debt collector for the purposes of the
FDCPA and creditors are not subject to the FDCPA when collecting their
accounts.") (internal quotation marks omitted); Aubert v. Am. Gen. Fin., Inc., 137
F.3d 976, 978 (7th Cir.1998) ("Creditors who collect in their own name and whose
principal business is not debt collection, therefore, are not subject to the
[FDCPA].").

    [9] To prove wrongful foreclosure under Georgia law, a plaintiff "must
establish a legal duty owed to it by the foreclosing party, a breach of that duty, a
causal connection between the breach of that duty and the injury it sustained, and
damages." Gregorakos v. Wells Fargo Nat. Ass'n., 647 S.E. 2d 289, 292 (Ga.
App. 2007).  Plaintiff argues that the FDCPA imposes on Defendant a duty not to
foreclose on the Property without a present right to possession and that Defendant
breached this duty by failing to prove that the signatures on the Deed are valid
prior to attempting to foreclose on the Property.  (Fourth Complaint ¶ 26).
Defendant has no duty to Plaintiff under the FDCPA because Defendant is a
creditor, not a debt collector.

1983) (citations omitted). "Based on the facts alleged, there must be a substantial continuing controversy between two adverse parties. The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred. Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." <u>Malowney v. Federal Collection Deposit Group</u>, 193 F.3d 1342, 1347 (11th Cir. 1999).

Georgia's procedure for cancelling security interests is laid out in O.C.G.A. § 44-14-3, which requires a creditor to direct the clerk of court to cancel the security interest within 60 days of the debt's being paid in full and to send the debtor the cancellation document.  Plaintiff contends that her Clayton County Notices cancelled Defendant's security interest in the Property, even though the loan has not been paid in full.  Despite having not followed the statutory procedure or presented any authority that would allow her to cancel Defendant's security interest unilaterally, she seeks a declaratory judgment that she has free and clear title to the Property.

Plaintiff filed her Clayton County Notices before she obtained the assistance of counsel.  To the extent that her claims are comprehensible, they seem to be based on fundamental misunderstandings of the purported rights she seeks to

exercise.  For example, the Notice of Right to Cancel states that she is exercising a right to rescind the mortgage transaction, effective in 60 days without Defendant's consent, with the effect that she retains free and clear title to the Property and Defendant is obligated to return all her payments, principal and interest, on the Loans, as well as pay her an additional $1,000,000.  The Notice of Removal appears to contain an attempt to quitclaim the Deed from herself to herself. Plaintiff, now represented by counsel, does not attempt to offer an argument or cite any authority in which documents like the Clayton County Notices have been held to have any legal effect, instead asserting that "it is up to the Court, rather than Defendant, to determine whether or not there is a justiciable controversy."  (Pl.'s Br. at 12).

To the extent that Plaintiff is asking the Court to ratify her Clayton County Notices by cancelling Defendant's security interest in the Property, Georgia law does not give the Court this authority.  See Taylor, Bean & Whitaker Mortg. v. Brown, 583 S.E. 2d 844, 846 (Ga. 2003) ("[T]his Court has held that a plaintiff may not use equity to obtain the cancellation of a security deed or promissory note if the plaintiff has not paid the note or tendered payment of the note.").  There is not any basis for the Court to find that the self-assignment Plaintiff manufactured

prevents Defendant from foreclosing on the Property.  Plaintiff's request for

declaratory judgment is required to be dismissed.

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [23]

Plaintiff's Amended Complaint [17] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Third Dismissal Motion

[14] is **DENIED AS MOOT**.


**SO ORDERED** this 24th day of August, 2011.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE